IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NYAMBER GRIZZEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:23CV445 |
| | ) |
| WILKES COUNTY, NORTH CAROLINA, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION, RECOMMENDATION, AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge on Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Docket Entry 1) (the "Application"), filed in conjunction with her pro se Complaint (Docket Entry 2). For the reasons that follow, the undersigned will grant the Application for the limited purpose of recommending dismissal of this action.

**RELEVANT STANDARDS**

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because [her] poverty makes it impossible for [her] to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted). "Dispensing with filing fees, however, [is] not without its

problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action . . . (ii) fails to state a claim on which relief may be granted[] or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

As to the first of these grounds, a plaintiff "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

2

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

Additionally, under 28 U.S.C. § 1915(e)(2)(B), constitutional and common-law doctrines that immunize government entities and/or personnel from liability for damages also constitute grounds for dismissal. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing sovereign immunity of states and state officials under the Eleventh Amendment); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship of 42 U.S.C. § 1983 and common-law immunity doctrines, including judicial immunity); cf. Allen v. Burke, 690 F.2d 376, 379 (4th Cir. 1982) (noting that, even where "damages are theoretically available under [certain] statutes . . ., in some cases, immunity doctrines and special

---

[1] Although "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); accord Atherton v. District of Columbia Off. of the Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (first quoting Erickson, 551 U.S. at 94; then Iqbal, 556 U.S. at 679)).

defenses, available only to public officials, preclude or severely limit the damage remedy" (internal quotation marks omitted)).

## BACKGROUND

Asserting claims under "42 U.S.C. § 1983 & 1985"[2] for alleged violations of her rights (Docket Entry 2 at 4),[3] Plaintiff initiated this action against five defendants: (1) Wilkes County, (2) Deputy C. Greene ("Deputy Greene"), (3) Rebecca Jordan ("Defendant Jordan"), (4) Judge Donna Shumate ("Judge Shumate"), and (5) the State Bureau of Investigation (individually, the "SBI," and collectively, the "Defendants") (id. at 1-3). According to Plaintiff's Complaint:

In 2021, officers with the Wilkes County Sheriff's Office arrested Plaintiff on assault charges. (Id. at 7.) Although Plaintiff had been "assaulted by [her] ex," C.R.S., the police wrongfully arrested and charged her in this incident, causing her to lose custody of her son. (Id.) Additionally, "[t]he Wilkes

---

[2] Section 1985 provides, as relevant here, "[i]f two or more persons in any State or Territory conspire . . ., for the purpose of depriving, . . . any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3). To the extent the Complaint raises separate Section 1985 claims, any claims that Defendants conspired against Plaintiff fail for the same reasons as the Section 1983 claims against Defendants.

[3] Docket Entry page citations utilize the CM/ECF footer's pagination.

County Child Support enforcement agency lied and said [she] had to pay" child support. (Id. at 8-9.) "[Defendant] Jordan was the caseworker in Wilkes County," and there "[wa]s a conflict of interest between [Defendant Jordan] and [Plaintiff's] exe[']s mom." (Id. at 9.) The girlfriend of Plaintiff's ex (C.R.S.) knows Judge Shumate, "the one who signed the order." (Id.) Further, Plaintiff "think[s]" that another ex-boyfriend, N.A., "works for the SBI and . . . hacked all [of her] devices and [her] wifi network." (Id.) Finally, the Complaint requests compensation of "20 billion" dollars, "dismiss[al] and expunge[ment]" of Plaintiff's assault charge, and to "quit being harassed [by] the court." (Id. at 6.)

## DISCUSSION

As an initial matter, to state a claim for relief under Section 1983, Plaintiff must assert "that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); see also Jones v. Chandrasuwan, 820 F.3d 685, 691 (4th Cir. 2016) ("Section 1983 is not itself a source of substantive rights, but rather provides a method for vindicating federal constitutional and statutory rights.").

5

**I. Wilkes County**

To begin, the Complaint names Wilkes County as a defendant (Docket Entry 2 at 2), but contains no allegations against Wilkes County specifically (see id. at 1-11). Instead, the Complaint contains various allegations against individuals and entities in Wilkes County. (See id.) Although "Congress did intend municipalities and other local government units to be included among those persons to whom [Section] 1983 applies," Monell v. Department of Soc. Servs., 436 U.S. 658, 690 (1978) (emphasis omitted), to state a viable Section 1983 claim against Wilkes County (either directly or via an official capacity claim against it/employee(s)), "it must be shown that the actions of [persons employed by Wilkes County] were unconstitutional and were taken pursuant to a custom or policy of [Wilkes County]," Giancola v. State of W. Va. Dep't of Pub. Safety, 830 F.2d 547, 550 (4th Cir. 1987) (observing that official capacity suits actually target employing entity) (citing Monell, 436 U.S. at 690-92). See Board of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997) ("[The Supreme Court] ha[s] required a plaintiff seeking to impose liability on a [local governmental body] under § 1983 to identify a [local governmental] 'policy' or 'custom' that caused the plaintiff's injury."). Importantly, "'a municipality cannot be held liable solely because it employs a tortfeasor or, in other words, a municipality cannot be held liable under [Section] 1983 on

a respondeat superior theory.'" Avery v. Burke Cnty., 660 F.2d 111, 114 (4th Cir. 1981) (quoting Monell, 436 U.S. at 691).

Therefore, Section 1983 liability can only attach to Wilkes County if "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992) (internal quotation marks omitted). Accordingly, Plaintiff must show that a "constitutional injury [wa]s proximately caused by a written policy or ordinance, or by a widespread practice that is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 954 (M.D.N.C. 2011) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)), rev'd in part on other grounds, 703 F.3d 636 (4th Cir. 2012). However, the Complaint does not allege that any policy or custom of Wilkes County or its officials caused any of the challenged events or otherwise harmed Plaintiff. (See Docket Entry 2 at 6-10.) Thus, Plaintiff fails to state a viable claim against Wilkes County, necessitating dismissal of any such claims. See 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Deputy Greene

Beyond naming Deputy Greene as a defendant (Docket Entry 2 at 2), the Complaint does not mention Deputy Greene (see id. at 1-11). Due to the lack of factual allegations involving Deputy Green, the

7

Complaint fails to establish a Section 1983 claim against Deputy Greene. See American Mfrs., 526 U.S. at 49 (requiring allegations of a "depriv[ation] of a right secured by the Constitution or laws of the United States" to state a Section 1983 claim). Put another way, the Complaint does not indicate in any meaningful way that Deputy Greene engaged in any violation of Plaintiff's rights as required to state a plausible Section 1983 claim. See Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").[4] Therefore, the Court should dismiss any claims against Deputy Greene under 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. Defendant Jordan

Next, as to Defendant Jordan, even liberally construed, the Complaint's conclusory assertion that Plaintiff "think[s] . . . a conflict of interest [exists] between [Defendant Jordan and Plaintiff's] exe[']s mom" (Docket Entry 2 at 9) does not plausibly establish that Defendant Jordan violated Plaintiff's rights. The Complaint does not further develop factual allegations against

---

[4] To the extent the Complaint rests its theory of liability against Deputy Greene on his position with the Wilkes County Sheriff's Office, such respondeat superior theories do not exist under 1983. See id. at 677. "Instead, a successful individual capacity claim must allege that the defendant was personally involved in the deprivation of [Plaintiff]'s rights." Bunting v. Cooper, Civ. Action No. 5:17-CT-3098, 2017 WL 5639948, at *3 (E.D.N.C. May 23, 2017) (citing, inter alia, Iqbal, 556 U.S. at 676, and Monell, 436 U.S. at 691-92). The Complaint makes no such assertions. (Docket Entry 2 at 6-10.)

8

Defendant Jordan, including any details regarding the asserted "conflict of interest" or how it allegedly adversely impacted Plaintiff. (Id. (stating in Complaint's sole reference to Defendant Jordan: "[Defendant] Jordan was the caseworker in Wilkes County and I think their [sic] is a conflict of interest between her [and] my exe[']s mom (R[.] S[.])").) "As such, Plaintiff's allegations [against Defendant Jordan] do not rise above the level of mere speculation." Studivent v. Lankford, No. 1:10cv144, 2010 WL 1568451, at *2 (M.D.N.C. Apr. 16, 2010), recommendation adopted, 2012 WL 1205722 (M.D.N.C. Apr. 11, 2012). Therefore, the Court should dismiss all claims against Defendant Jordan for failure to state a claim. See 28 U.S.C. § 1915(e)(2)(B)(ii).

**IV. Judge Shumate**

As for Plaintiff's claim against Judge Shumate (see Docket Entry 2 at 2), state and federal judges enjoy judicial immunity, namely, "an immunity from suit, not just from ultimate assessment of damages," Mireles v. Waco, 502 U.S. 9, 11 (1991). "Judges performing judicial acts within their jurisdiction are entitled to absolute immunity from civil liability claims," In re Mills, 287 F. App'x 273, 279 (4th Cir. 2008) (emphasis added), "even if such acts were allegedly done either maliciously or corruptly," King v. Myers, 973 F.2d 354, 356 (4th Cir. 1992). See Mireles, 502 U.S. at 11.

9

To determine whether an action constitutes a "judicial act" protected by judicial immunity, the Court must consider "whether the function is one normally performed by a judge, and whether the parties dealt with the judge in his or her judicial capacity." King, 973 F.2d at 357. A plaintiff can only overcome judicial immunity when the allegations concern acts of a nonjudicial nature or if the judge acted "in the complete absence of all jurisdiction." Darling v. Falls, 236 F. Supp. 3d 914, 927 (M.D.N.C. 2017) (citing Mireles, 502 U.S. at 11); see also Stump v. Sparkman, 435 U.S. 349, 359-62 (1978) (holding that judicial immunity applies even when judge's "exercise of authority [was] flawed by the commission of grave procedural errors" and that "judicial act" encompasses any "function normally performed by a judge").

Plaintiff alleges that Judge Shumate violated her rights by "sign[ing] the order." (Docket Entry 2 at 9.)[5] Signing an order constitutes a routine judicial action. See King, 973 F.2d at 357. Nowhere does Plaintiff allege that Judge Shumate took any

---

[5] The Complaint does not specify the contents of the order at issue. (See id. at 6-10.) The allegations regarding Judge Shumate appear amid discussion of child custody and child support matters. (See id.) This discussion includes references to multiple orders. (See, e.g., id. at 8-9 (stating "they tricked me into signing an order that said I was the father and I'm not sure if it is a joke"), 9 (referencing "the wrong custody order").) Regardless of the context and/or content of the relevant order, Judge Shumate enjoys judicial immunity because signing an order qualifies as a routine judicial function. See King, 973 F.2d at 357.

10

nonjudicial actions or that she acted outside her jurisdiction. (Docket Entry 2 at 6-11.) Accordingly, Judge Shumate enjoys absolute judicial immunity from Plaintiff's claims. Therefore, the Court should dismiss Plaintiff's claims against Judge Shumate. See 28 U.S.C. § 1915(e)(2)(B)(iii).

### V. The SBI

Finally, Plaintiff asserts claims against the SBI. (Docket Entry 2 at 3.) The SBI constitutes an arm of the State of North Carolina. See Green v. North Carolina State Bureau of Investigation Crime Lab, No. 3:11cv69, 2011 WL 4074613, at *2 (W.D.N.C. Sept. 13, 2011) ("[T]he SBI is not a 'person' under [Section] 1983. . . . For Eleventh Amendment purposes, the SBI is considered an arm of the State of North Carolina.") (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989)). As a state agency, the SBI does not qualify "a[s a] 'person[]' under § 1983." Will, 491 U.S. at 71. For that reason, Plaintiff fails to state a claim against the SBI. Even setting aside this deficiency, the Eleventh Amendment would limit any relief against the SBI to a prospective injunction to remedy an ongoing violation of federal law. See McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010) (discussing "Eleventh Amendment immunity"). And Plaintiff does not request any injunctive relief against the SBI. (See Docket Entry 2 at 6.) Therefore, the Court should dismiss all claims against the SBI under 28 U.S.C. § 1915(e)(2)(B)(ii) & (iii).

11

**CONCLUSION**

This action fails to state a claim and/or runs afoul of immunity doctrines.

**IT IS THEREFORE ORDERED** that Plaintiff's Application (Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failing to state a claim and seeking relief from immune defendants.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 22, 2023